UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| JAMES HENRY ALLEN, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | No. 2:18-CV-147-RLJ-CRW |
| WARDEN CHERRY LINDAMOOD, | ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This is a prisoner's pro se petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 in which Petitioner challenges his convictions for first degree murder and unlawful possession of a deadly weapon with the intent to employ it in the commission of first-degree murder. After reviewing the relevant filings, including the state court record, the Court finds that the record establishes that Petitioner is not entitled to relief under § 2254. Accordingly, no evidentiary hearing is warranted, *see* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the petition for habeas corpus relief will be **DENIED**, and this action will be **DISMISSED**.

### I. BACKGROUND

On May 10, 2010, Deborah Keplinger, Petitioner's ex-wife with whom he was romantically involved periodically after their divorce, was at her home, where Petitioner had previously resided with her, with Richard Carter ("the victim"). *State of Tennessee v. Allen*, No. E2014-00529-CCA-R3-CD, 2015 WL 303479, at *1–2 (Tenn. Crim. Ct. App. Jan. 23, 2015), *perm. app. denied* (Tenn. Aug. 13, 2015) ("*Allen I*"). After both dogs at her house began barking, Mrs. Keplinger opened a door to a porch to let her "'inside'" dog out. *Id.* at 2. When she did so, she tried to turn on the

porch light, but it did not come on.  *Id.*  Mrs. Keplinger then asked the victim whether they had just changed that light bulb, which the victim confirmed before approaching the porch door and looking through the window.  *Id.*  While he did this, Mrs. Keplinger walked into the kitchen, at which point she "heard what sounded like 'fireworks' and 'popping sounds' coming from outside of the home."  *Id.*  Mrs. Keplinger realized they were gun shots and ran to the door.  *Id.*  The glass from the window on the door was shattered and the victim, who was still standing in front of the door, stated he had been shot before falling to the floor.  *Id.*

Mrs. Keplinger called 911.  *Id.*  During this phone call, a recording of which the trial court admitted into evidence at Petitioner's trial despite objection by Petitioner's counsel, "Mrs. Keplinger was often hysterical, stating more than once that it was probably her 'ex' that was responsible for the shooting."  *Id.* at 4.  Mrs. Keplinger also cried and pleaded for help, and gave Petitioner's name, a description of his car, and his address to the 911 dispatcher.  *Id.*

The victim died as a result of the shooting, and police located Petitioner and took him in for an interview.  *Id.* at *2–3.  In this interview, which police did not record because the recording equipment in the room was not working, Petitioner told police that seeing Mrs. Keplinger and the victim hug through the window of her residence made him angry and made him "'snap.'"  *Id.* at *4–5.  Petitioner then obtained a gun that he had hidden previously, went to Mrs. Keplinger's house, and unscrewed a light bulb on her porch because he did not want to be seen.  *Id.*

After the dogs at Mrs. Keplinger's house started barking, Petitioner saw Mrs. Keplinger open and close the front door, then saw the victim's face in the window of the door, at which point Petitioner shot one or two "'warning shot[s]'" in the air.  *Id.*  Petitioner then shot through the door of the house several times, which he explained by stating that his daughter had told him the victim had been carrying a gun and that he thought it looked like the victim was pulling up a gun.  *Id.*  An

2

officer took notes during Petitioner's police interview, from which he created a written statement that Petitioner signed. *Id.* at *4.

A grand jury from Washington County, Tennessee indicted Petitioner for first-degree murder, unlawful possession of a deadly weapon with the intent to use it in committing first-degree murder, and violation of an order of protection. *Id.* at *1. Prior to trial, Petitioner's counsel filed a motion to suppress his statement to police from the evidence on the ground that police had not given him *Miranda* warnings before this interview. *Id.* at *3. However, the trial court denied this motion after a hearing, and specifically discredited Petitioner's testimony at the hearing that the signature on the *Miranda* rights waiver form was not his and that he was not sure whether his signature was on certain pages of his written statement. *Id.*

During Petitioner's trial, the trial court dropped the charge against him for violation of the order of protection. *Id.* at *1. Also, police testimony at Petitioner's trial showed that when police arrived at Mrs. Keplinger's residence after the shooting, they found the porch light outside was not working. *Id.* at *4. Additionally, an agent from the Tennessee Bureau of Investigation ("TBI") testified that a bullet retrieved from the ceiling of Mrs. Keplinger's residence came from a rifle obtained from Petitioner. *Id.* at *5. However, he was unable to determine whether a bullet found in the wall of that house came from the same rifle due to its damage but noted that the second bullet "has a lot of the same characteristics." *Id.* The same TBI agent further testified that the door from the residence, which he examined in the courtroom, indicated that six bullets had passed through the door from the outside to the inside, and that the glass on the door was cratered in a way that indicated the bullet that had penetrated it had also come from the outside. *Id.*

Based on this and other evidence, the jury convicted Petitioner of both remaining charges against him. *Id.* at *6. Petitioner received a sentence of life imprisonment with the possibility of

3

parole for his first-degree murder conviction, and one year for his conviction for possession of a weapon during the commission of the first-degree murder, to be served concurrently. *Id.* Petitioner appealed, the Tennessee Court of Criminal Appeals ("TCCA") affirmed, *id.* at *14, and the Tennessee Supreme Court denied Petitioner permission to appeal [Doc. 19].

Petitioner then filed a petition for post-conviction relief alleging claims for ineffective assistance of counsel, which the post-conviction court denied after a hearing. *Allen v. State of Tennessee*, No. E2017-01043-CCA-R3-PC, 2018 WL 994046, at *1 (Tenn. Crim. App. Feb. 20, 2018), *perm. app. denied* (May 16, 2018) ("*Allen II*"). The TCCA affirmed, *id.* at * 5, and the Tennessee Supreme Court denied Petitioner permission to appeal [Doc. 10-28].

Now before the Court is Petitioner's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he asserts (1) a claim challenging the sufficiency of the evidence for his convictions [Doc. 1 p. 4–6]; (2) several claims for ineffective assistance of trial counsel [*Id.* at 6–8]; and (3) a claim challenging his life imprisonment sentence as excessive [*Id.* at 9]. Respondent filed a response in opposition to the petition [Doc. 13], as well as the state record [Doc. 10]. Petitioner did not file a reply, and his time for doing so has passed [Doc. 9 p. 1].

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq.*, a district court may not grant habeas corpus relief for a claim that a state court decided on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

4

28 U.S.C. § 2254(d)(1)–(2).

The § 2254(d) standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State court's factual findings unless the petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### III. ANALYSIS

The Court will first address Petitioner's claim challenging the sufficiency of the evidence supporting his first-degree murder conviction, which he exhausted with the TCCA, before addressing the remaining claims.

#### A. Sufficiency of the Evidence

Petitioner challenges the sufficiency of the evidence for his first-degree murder conviction[1] [Doc. 1 p. 4–5]. Petitioner presented this claim to the TCCA in his direct appeal, and the TCCA found it had no merit. *Allen I,* at *13–14.

Petitioner has not established that he is entitled to relief under § 2254 for this claim. In the relevant portion of its opinion addressing this claim, the TCCA first correctly noted that the United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling rule for such claims, before citing a number of Tennessee state court decisions regarding claims challenging the sufficiency of the evidence. *Allen I*, at *13. In *Jackson*, the Supreme Court held that the evidence is sufficient to sustain a conviction if, viewing the evidence

---

[1] As noted above, Petitioner challenges the sufficiency of the evidence for both of his convictions in his petition [Doc. 1 p. 4–5]. However, as set forth more fully below, Petitioner procedurally defaulted this sufficiency of evidence claim for his unlawful possession of a deadly weapon conviction. Thus, the Court will address it separately.

5

in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*; *Jackson*, 443 U.S. at 319.

After setting forth the *Jackson* standard for Petitioner's claim challenging the sufficiency of the evidence for his first-degree murder conviction, the TCCA analyzed the claim as follows:

> First degree murder is described as "[a] premeditated and intentional killing of another...." T.C.A. § 39–13–202(a). Tennessee Code Annotated section 39–13–202(d) provides that:
>
>> "[P]remeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.
>
> An intentional act requires that the person have the desire to engage in the conduct or cause the result. T.C.A. § 39–11–106(a)(18). Whether the evidence was sufficient depends entirely on whether the State was able to establish beyond a reasonable doubt the element of premeditation. *See State v. Sims,* 45 S.W.3d 1, 7 (Tenn. 2001); *State v. Hall,* 8 S.W.3d 593, 599 (Tenn. 1999). Whether premeditation is present is a question of fact for the jury, and it may be inferred from the circumstances surrounding the killing. *State v. Young,* 196 S.W.3d 85, 108 (Tenn. 2006); *see also State v. Suttles,* 30 S.W.3d 252, 261 (Tenn. 2000); *State v. Pike,* 978 S.W.2d 904, 914 (Tenn. 1998).
>
> Premeditation may be proved by circumstantial evidence. *See, e.g., State v. Brown,* 836 S.W.2d 530, 541–42 (Tenn. 1992). Our supreme court has identified a number of circumstances from which the jury may infer premeditation: (1) the use of a deadly weapon upon an unarmed victim; (2) the particular cruelty of the killing; (3) the defendant's threats or declarations of intent to kill; (4) the defendant's procurement of a weapon; (5) any preparations to conceal the crime undertaken before the crime is committed; (6) destruction or secretion of evidence of the killing; and (7) a defendant's calmness immediately after the killing. *State v. Bland,* 958 S.W.2d 651, 660 (Tenn. 1997); *Pike,* 978 S.W.2d at 914–15. This list, however, is not exhaustive and serves only to demonstrate that premeditation may be established by any evidence from which the jury may infer that the killing was done "after the exercise of reflection and judgment." T.C.A. § 39–13–202(d); *see Pike,* 978 S.W.2d at 914–15; *Bland,* 958 S.W.2d at 660. One well-regarded treatise states that premeditation may be inferred from events that occur before and at the time of the killing:

6

> Three categories of evidence are important for [the] purpose [of inferring premeditation]: (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, planning activity; (2) facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred; and (3) facts about the nature of the killing from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.
>
> 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.7(a) (2d ed. 2003).
>
> We conclude that the evidence presented was sufficient to support the jury's findings that premeditation existed. The evidence presented at trial showed that Defendant engaged in repeated harassment of his ex-wife and was unhappy with and troubled by her new relationship with the victim. Defendant spied on the victim and his ex-wife and made threats against their lives prior to the incident. On the night of the victim's death, Defendant removed the lightbulb from the porch lamp in order to prevent himself from being discovered. When the victim appeared to investigate why the dog was barking and to see why the porch light was not working, Defendant shot him through the door of the trailer several times. Mrs. Keplinger hysterically called 911 and reported that Defendant was most likely the shooter. After he was apprehended, Defendant himself confirmed that he was the shooter. He led the police to where he had hidden the murder weapon. Testing confirmed that this was indeed the gun that murdered the victim. The jury heard the evidence and chose to disregard Defendant's theory that the crime was born out of passion. It was in their prerogative to do so. From this evidence, we conclude that a reasonable jury could find premeditation. Consequently, Defendant's conviction for first degree murder is affirmed.

*Allen I*, at *13–14.

Petitioner has not established that this decision was contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented. A habeas court reviewing a challenge to the sufficiency of the evidence must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). First, under *Jackson*, the court gives deference to the verdict "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16); *see also Cavazos v. Smith*, 565 U.S. 1, 6–7 (2011) (providing that "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must

7

presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'") (quoting *Jackson*, 443 U.S. at 326). The habeas court must also give additional high deference to the state court's consideration of the verdict pursuant to the AEDPA standards. *Cavazos*, 565 U.S. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review"). As such, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

However, Petitioner presents only conclusory allegations that the TCCA's decision denying this claim was contrary to clearly established federal law and/or based on an unreasonable determination of the facts in light of the evidence presented [*Id.*]. His failure to present any specific legal theories and facts to support these conclusions is fatal to this claim. Rule 2(c)(2) of the Rules Governing Section 2254 Cases (providing that a petition must "state the facts supporting each ground" for relief in the petition); *McKnight v. Bobby*, No. 2:09-CV-059, 2020 WL 5513576, at *80 (S.D. Ohio Sept. 14, 2020) (holding that the petitioner's conclusory statement that a state court decision "meets the requirements of 28 U.S.C. § 2254(d)(1) and (2) . . . does not establish the unreasonableness of the state court's rejection of [his] claim"). Moreover, after reviewing the state court record and the relevant elements of the crime of first-degree murder under Tennessee law, the Court agrees with the TCCA that a reasonable jury could have found Petitioner guilty of first-degree murder based on the evidence presented at his trial. Thus, Petitioner is not entitled to relief under § 2254 for this claim.

### B. Remaining Claims

Petitioner did not present his remaining claims to the TCCA [Docs. 10-13, 10-22]. Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his available

8

state court remedies. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires the petitioner to "fairly present" each federal claim to all levels of the state appellate system by presenting the "same claim under the same theory" up to the state's highest court, *Wagner v. Smith*, 581 F.3d 410, 414, 418 (6th Cir. 2009), to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). Where a petitioner no longer "has the right under the law" of Tennessee to properly exhaust a claim, the claim is technically exhausted but procedurally defaulted. *See* 28 U.S.C. § 2254(c); *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (providing that "when a petitioner fails to present a claim in state court, but that remedy is no longer available to him, the claim is technically exhausted, yet procedurally defaulted"); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule).

"Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). Thus, a federal habeas court will not review a procedurally defaulted claim on the merits unless the petitioner shows cause to excuse his failure to comply with the procedural rule and actual prejudice from the constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Accordingly, the Court must now examine each of Petitioner's procedurally defaulted claims to see if he has shown cause to excuse that default and actual prejudice from the alleged violation.

### i. Sentence

First, Petitioner seeks to excuse his procedural default of his claim challenging his life imprisonment sentence as excessive and imposed in violation of his due process rights and/or

9

Tennessee statutes by noting that the Supreme Court decisions in *Johnson v. United States,* 135 S. Ct. 2552, 2563 (2015) and *Sessions v. Dimaya,* 138 S. Ct. 1204, 1223 (2018) were unavailable at the time of his state court filings [Doc. 1 p. 9].

But this argument is unpersuasive, mainly because these decisions have no relevance to this claim. Specifically, in *Johnson* and *Dimaya*, the Supreme Court invalidated the Armed Career Criminal Act and the Immigration and Nationality Act's definitions of a "crime of violence" under their respective residual clauses governing enhancement of a sentence. *Johnson,* 135 S. Ct. at 2563; *Dimaya,* 138 S. Ct. at 1212. However, as Respondent correctly points out, Petitioner's life imprisonment sentence was not enhanced due to any other crimes, but rather resulted from the fact that Tenn. Code Ann. § 39-13-202 provides that this is the minimum sentence for a first-degree murder conviction [Doc. 10-1 p. 109]. Thus, Petitioner has failed to establish cause to excuse his procedural default of this claim and the Court will not address it on the merits.

### ii. Sufficiency of the Evidence for Possession of a Weapon Conviction

Petitioner also seeks to challenge the sufficiency of the evidence to support his possession of a weapon during the commission of the first-degree murder conviction in his petition [Doc. 1 p. 4–5]. However, as noted above, Petitioner only exhausted his claim challenging the sufficiency of the evidence underlying his first-degree murder conviction with the TCCA [Doc. 10-13 p. 19–24]. Thus, he procedurally defaulted this claim, and he has not presented any reason for the Court to excuse this default. Accordingly, the Court will not address it on the merits.

### iii. Ineffective Assistance of Counsel

The only claim for ineffective assistance of counsel that Petitioner exhausted with the TCCA was his claim that trial counsel did not investigate his case and present his defense as Petitioner requested [Doc. 10-22 p. 11–19]. However, Petitioner does not raise this claim in his §

10

2254 petition but instead asserts that counsel was ineffective in (1) failing to assert that the trial court erred in admitting hearsay statements from the victim about the changing of the lightbulb; (2) failing to object to Mrs. Keplinger's testimony about his prior bad acts, including violation of the order of protection; (3) failing to call Petitioner to testify about his lack of intent to kill the victim; and (4) failing to employ a crime scene reconstruction expert [Doc. 1 p. 6–7]. Petitioner also asserts a claim challenging his convictions based on the cumulative effect of these alleged errors [*Id.* at 7].

Petitioner seeks to excuse his procedural default of these claims by asserting that his attorney refused to raise these claims in his post-conviction proceedings, although Petitioner raised them in his pro se application for permission to appeal the denial of his post-conviction petition [Doc. 10-26]. An attorney's ineffective assistance in post-conviction proceedings generally does not establish "cause" to overcome procedural default. *Id.* at 755. However, where a habeas petitioner could raise a claim for trial counsel's ineffective assistance for the first time in a post-conviction petition, ineffective assistance of post-conviction counsel may be "cause" to excuse a procedural default of a substantial ineffective assistance of counsel claim. *Trevino v. Thaler*, 133 S.Ct. 1911, 1918–21 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012); *Wallace v. Sexton*, 570 F. App'x 443, 452–53 (6th Cir. 2014). This exception, commonly referred to as the *Martinez* exception, applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014).

As Petitioner's claims for ineffective assistance of trial counsel arguably fall under *Martinez* to the extent that they are substantial, the Court will address the merits of these claims.

### a. Standard

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const.

11

amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. A petitioner has the burden of proving ineffective assistance of his counsel. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. To meet this prong, a petitioner must demonstrate that his counsel was so deficient that he no longer "function[ed] as the 'counsel' guaranteed under the Sixth Amendment." *Id.* at 687. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the

12

claim must be rejected. *Id.* at 687. Moreover, a habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given the "doubly deferential" review of a such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### b. Analysis

Petitioner has failed to establish that he is entitled to relief under § 2254 for any of his ineffective assistance of counsel claims. First, Petitioner's allegation that trial counsel was ineffective for not arguing that the trial court erred in admitting Mrs. Keplinger's testimony regarding statements from the victim about the changing of the lightbulb as it was hearsay is not supported by the record, as the record establishes that these statements were not offered to prove whether the lightbulb had been changed but rather to explain the victim's actions in going towards the door, and therefore were not hearsay [Doc. 10-5 p. 70–72]. *See* Fed. R. Evid. 801(c)(2); *Browne v. Signal Mountain Nursery, L.P.*, 286 F. Supp. 2d 904, 924 (E.D. Tenn. 2003) (providing that "an out of court statement offered to serve some other purpose is not hearsay and may be considered by the trier of fact"). Thus, counsel cannot be constitutionally ineffective for failing to raise a meritless argument regarding this testimony. *See, e.g., Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

Further, as Respondent correctly points out, at the time Mrs. Keplinger testified about her order of protection against Petitioner and his acts violating that order, the charge against Petitioner for violating the order of protection was pending, and thus this testimony was relevant [*Id.* at 61–66; 93]. Accordingly, counsel cannot be faulted for failing to object to this testimony. *Id.* To the extent Petitioner challenges his counsel's failure to object to other testimony from Mrs. Keplinger about his bad acts, he has not established that any such objection would have changed the result of his trial.

13

Also, the record establishes that Petitioner chose not to testify at trial [Doc. 10-8 p. 83–89]. Thus, his attorney cannot be faulted for not calling him to testify. Moreover, to the extent Petitioner challenges counsel's choices regarding trial strategy,[2] he has failed to set forth any proof that these choices were the result of counsel's lack of preparation for Petitioner's trial. *See Strickland*, 466 U.S. at 690–91 (holding that counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (holding that "strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation"). While Petitioner generally alleges that counsel failed to present "available evidence" and "credible proof" that Petitioner acted under duress in support of Petitioner's defense, Petitioner likewise has failed to present any such evidence or to establish that any such evidence was available to his counsel at the time of his trial. Accordingly, Petitioner has not met his burden to show that counsel was ineffective with regard to any such evidence or that such evidence would have changed the result of his trial.

---

[2] To the extent this is the same claim Petitioner presented to the post-conviction court [Doc. 10-20 p. 18–19, but not to the TCCA, he is unable to raise it now under the *Martinez* exception. *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (stating that *Martinez* did not apply "because those claims were raised and rejected on the merits by the initial postconviction court, and ineffective assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals"). Also, to the extent this claim could be construed as the same claim Petitioner presented to the TCCA in his post-conviction appeal [Doc. 10-22], he has failed to show that the TCCA's denial of this claim was contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented. *Allen II*, at *5.

14

Also, Petitioner's allegation that counsel was ineffective for not presenting a crime scene reconstruction expert is conclusory,[3] and Petitioner presents no facts or evidence to support a finding that such an expert would have changed the result of his trial.

Lastly, as to Petitioner's claim alleging that the cumulative effect of his counsel's deficiencies entitles him to § 2254 relief, "[t]he Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002). Moreover, even if such a claim were cognizable under § 2254, Petitioner has failed to establish that he is entitled to habeas corpus relief for any of his trial counsel's individual acts, and thus could not recover for any such claim. *Id.*

## IV. CONCLUSION

For the reasons set forth above, the petition for habeas corpus relief under § 2254 will be **DENIED** and this action will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas corpus proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484. When a district court denies a habeas petition

---

[3] Again, to the extent this is the same claim Petitioner presented to the post-conviction court [Doc. 10-20 p. 19], but not to the TCCA, he is unable to raise it now under the *Martinez* exception. *Middlebrooks*, 843 F.3d at 1136.

on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right for his claim challenging the sufficiency of the evidence for his first-degree murder conviction or his ineffective assistance of counsel claims such that they would be adequate to deserve further review. Moreover, jurists of reason would not disagree with the Court's finding that Petitioner procedurally defaulted his other claims and has not presented sufficient grounds for the Court to excuse that default. Accordingly, a **COA SHALL NOT ISSUE.** Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge